IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re: ALEXANDER LOUIS BEDNAR,   Case Number: 15-11916-TRC
                                 Chapter 7
Debtor.

## MOTION TO AVOID JUDGMENT LIEN OF CREDITOR FIRST AMERICAN MORTGAGE COMPANY AND BRIEF IN SUPPORT THEREOF AND NOTICE OF OPPORTUNITY FOR HEARING

COMES NOW Debtors and respectfully request that this Court enter an order pursuant to 11 U.S.C. §522(f) avoiding the judgment lien of Creditor. In support, Debtor states as follows:

### FACTS

1. During this case, the Court required the Debtor to participate in Court-ordered mediation with the Honorable Charles Goodwin, regarding an adversarial proceeding between the second mortgage note holder (RCB Bank–represented by Scott Kirtley), and the Debtor.

2. At no point did Franklin American respond or file a motion to avoid stay in this case.

3. Per the agreement Judge Goodwin mediated, (which had an implementation period from early 2017 to mid 2018), Mr. Bednar and RCB Bank agreed to a stay in the adversarial proceeding in this case as well as Oklahoma County State Court Case CJ-2015-192.

4. Creditor First American Mortgage is a co-defendant in CJ-2015-192, but never responded in that case either and did not object to a sheriff sale in that case in 2016.

5. After the sheriff sale in CJ-2015-192 removed liens, in September of 2016, Franklin American Mortgage filed a separate foreclosure cause of action (CJ-2016-5004) listing the very same creditors and lien holders as in CJ-2015-192, but failed to serve the Petition and Summons within 180 days on Mr. Bednar, later admitting such fact.

1

6. Mr. Bednar filed a special appearance and motion to dismiss the second foreclosure action (CJ-2016-5004) per 12 OS 2012(B)(8) (same cause of action with same parties in another court) and the district court held a hearing in February of 2017 ruling on multiple issues, including consolidation of the cases, and the fact that Mr. Bednar was not required to answer the Petition until the Court finally adjudicated all preliminary issues (to dismiss, quash summons, etc, per 12 OS 2012(C)).

7. Mr. Bednar's dispositive motion pleading in CJ-2016-5004 was stricken in May of 2017, and was re-set to be heard in July of 2018. His pleading somehow is gone from the court clerk record in state court but referenced by the parties and the court. To date that motion and motions to quash summons and for lack of jurisdiction are outstanding.

8. A motion to settle the journal entry from CJ-2016-5004 in February of 2017 still has not been heard in CJ-2016-5004, and was set on July 12, 2018 along with the reconsideration of the motion to dismiss and other motions.

9. The Debtor Mr. Bednar filed a Motion to oppose the confirmation of the first sheriff sale to RCB in CJ-2015-192, which identified Franklin American Mortgage's first mortgage debt as an incorrect amount. Mr. Bednar's motion to set aside the 2016 sheriff sale remains outstanding, and was stayed pending Judge Goodwin's mediated settlement that extended into mid 2018 between RCB and Mr. Bednar.

10. Judge Charles Goodwin helped the parties craft a meaningful, mutually agreeable settlement, which eventually included RCB quitclaiming the property to a trust Mr. Bednar's father created for Debtor's daughter's benefit. The property now has over 150,000 equity in it above the principal owed to Franklin American.

11. During the period of the mediation settlement implementation, Mr. Bednar received two offers to sell the extra lot associated with the property, and Stewart Title received earnest money. Attorney Scott Kirtley made effort to provide assurances to Stewart Title regarding sale of the extra lot, that RCB would help resolve one of the two foreclosure action concerns.

12. The first offer for sale of the extra lot was during the mediation with Judge Goodwin, but because Franklin American refused to mediate, the offer was never incorporated into mediation. That offer was for 50,000. Franklin American refused to even communicate regarding the offers. A second offer for the extra lot for 52,500 was forwarded to Franklin American in July of 2017, but again Franklin American chose never to give one single a courtesy response to Mr. Bednar's communications and Stewart Title's attempts to sell the lot.

13. Both offers were above other prices for lot sales and attorney Scott Kirtley, who had helped achieve a mediated agreement, worked amicably with Stewart Title. Franklin American communicated to Mr. Bednar that it refused to accept such money, and instead stated it would rather litigate its new case involving the same parties and same property, even though they were already party in the pending case CJ-2015-192.

14. Franklin American did nothing in litigation between May of 2017 and late April of 2018 in CJ-2016-5004.

15. On April 20, 2018, RCB's counsel filed notice of settlement in CJ-2016-5004, placing Franklin American that it had quitclaimed the property pursuant to mediated settlement that this Court Ordered, per Judge Goodwin.

16. Toward the end of April 2018, the attorney representing Franklin American Mortgage who had participated in the February 23, 2017 hearing (where the court had ruled to allow for preliminary matters before judgment on the case) left the firm, and an attorney named Don Timberlake took over and aggressively took action without apprising himself of the court's previous rulings in the case.

17. In violation of the law of the case from February of 2017 that to date has not yet been settled (court transcript not memorialized into Order), ***even though the first sheriff sale has not been finally approved***, prior to final motions to avoid liens in this bankruptcy from CJ-2015-192, without consolidating the cases, without providing notice to Mr. Bednar in violation of local rules, and ***without even filing a motion***, the attorney for Franklin American (Mr. Timberlake) sought and procured an ex parte default judgment in CJ-2016-5004 on April 25, 2018.

18. Mr. Bednar filed motions to set aside the ex parte default judgment and pointed out gross violations of procedural due process, as well as glaring ethical concerns about the relationship between Franklin American's counsel and the Court. In light of the clear improprieties about the default judgment issued April 25, 2018, the Court in CJ-2016-5004 sua sponte set aside that improper default judgment on May 16, 2018, and on that date set Mr. Bednar's motion to quash summons and to settle previous law of the case, for July 12 2018 (Judge Andrews' docket).

19. However those preliminary motions, regarding jurisdiction and law of the case, were never heard by Judge Andrews on July 12, 2018, because the case was strangely transferred out of county to Judge Hesse in Canadian County.

4

20. Without ever providing Mr. Bednar notice, even though Mr. Bednar visited the opposing counsel at their offices on May 16, 2018, Franklin American filed on May 16, 2018 and set a Motion for Default Judgment before Judge Andrews on June 8, 2018.

21. On May 18, 2018, Judge Andrews office contacted Mr. Bednar to let him know that his Motions were stricken and that the case was transferred to Judge Hesse in Canadian County.

22. Again without notice to Mr. Bednar, Franklin American sought and procured a default Judgment on June 8, 2018, even though Judge Andrews issued a ruling that was published on OSCN that he had "Stricken" the June 8, 2018 hearing on Franklin American's Motion for Default.

23. Judge Hesse then took action to cause Judge Andrews' clerk to alter Judge Andrews' ruling on OSCN.net, taking out the word "stricken" and finding Mr. Bednar in default, even though Mr. Bednar's response time had not run, according to a strange certificate of mailing filed June 4, 2018 by Franklin American's attorneys, indicating that they had only noticed Mr. Bednar by mail on May 23, 2018 regarding the hearing before Judge Andrews that was stricken.

24. Judge Don Andrews has admitted in numerous recorded conversations that he had stricken the hearing on June 8, 2018, and that Mr. Bednar did not have any notice of a hearing, and that the Default Judgment procured by Franklin American Should be subject to a Motion to Vacate.

25. On June 8, 2018, after having learned about Judge Hesse having caused the Court Clerk to publish a known falsity on OSCN, Mr. Bednar immediately asked Judge Hesse to recuse, and called him, also drafting a letter to him and communicating the recusal

request to Mr. Timberlake (Franklin American's attorneys), asking that they not bring another ex parte order to Judge Hesse on Monday June 11, 2018.

26. On the morning of June 11, 2018, Mr. Bednar called Judge Hesse's office and requested a Rule 15 in camera meeting as a follow up to the call on Friday June 8, 2018, and was told to email the request to Judge Hesse via his assistant. Mr. Bednar emailed a request to Judge Hesse not to rule on any issue pending the Rule 15 recusal process, attached the letter drafted June 8, 2018, and copied Franklin American's counsel.

27. In light of the professional courtesy requested, Franklin American brought another ex parte order and had it signed by Judge Paul Hesse on June 11, 2018, indicating a money judgment against Mr. Bednar, in CJ-2016-5004.

28. June 11, 2018 was the date Mr. Bednar was supposed to respond to a Motion for Default Served on him by mail on May 23, 2018, and he requested striking the June 8, 2018 minute Order, and that the Court re-instate Judge Andrews' ruling that the hearing had been "stricken" on June 8, 2018.

29. Judge Hesse provided the email where he suggested that Judge Andrews' clerk alter Judge Andrews' ruling, and it clearly states that Judge Hesse knew that Judge Andrews had ruled to strike the default judgment hearing that day.

30. Franklin American's Petition seeks approximately 425,000 in principal and a bit more for interest and attorney fees. However, the ex parte order procured on June 11, 2018 appears to allow for in personam collection in violation of the discharge injunction.

31. Franklin American sought a sheriff sale the very same day it procured the June 11, 2018 ex parte default judgment at issue and scheduled it for August 9, 2018.

32. At the sheriff sale, Mr. Bednar showed up with an attorney interested in purchasing the property and taking advantage of the equity in the extra lot.

33. Even though the void ex parte, procedurally deficient June 11, 2018 default judgment order states an amount of approximately 425,000, Franklin American misrepresented to the Sheriff on August 9, 2018 that it had a Judgment "Credit" of 528,000 dollars.

34. The law requires the sheriff to affirm by affidavit that notice was provided at least thirty days prior to the sheriff sale to known parties. The Sheriff's notice regarding the sale, however, was not filed until after the sheriff sale, as Mr. Bednar witnessed Franklin American's attorneys filing the notice of the sale actually after the sale. See the Notice by the Sheriff bearing an August 9, 2018 date, the same date as the sale.

35. Franklin American's attorneys apparently have such a strong connection with the sheriff's office, that they provided their own form and typed up documents that someone purportedly from the sheriff's office signed, falsely indicating a pre-existing judgment credit of $528,000. This conflicts with the judgment and reflects augmentation of the in personam amount claimed against Mr. Bednar, in violation of the discharge injunction.

36. The Franklin American sheriff sale should not have occurred, because noticing the same parties as CJ-2015-192 was moot and redundant, and as the first sheriff sale from 2016 has not been finally adjudicated, and had been subject to an agreed stay per bankruptcy mediation agreement overseen by Judge Goodwin.

37. After securing its second void ex parte default judgment Order in CJ-2016-5004, Franklin American is telling the state court that Mr. Bednar needs to take out a bond in the full amount to be able to challenge the default judgment. The active use of a money judgment approximately 100,000 dollars above and beyond the Petition, to bid against

7

Mr. Bednar and his friend at a premature second sheriff sale, and to conspire with the sheriff's office to falsely publish a credit well above the June 11, 2018 judgment that is inherently void ab initio, violates the discharge injunction.

38. Such money judgment from June 11, 2018, in favor of Franklin American Mortgage, operates as a judgment lien against Debtor's homestead property, which was to be transferred to his daughter's trust per mediation agreement, and is found at:

15721 Via Bella
Edmond, OK 73013

More particularly described as:

ESPERANZA SEC 2 007 000 LOTS 1 & 9, an Addition to Edmond, Oklahoma, Oklahoma County, State of Oklahoma, according to the recorded plat thereof

39. Debtors filed his Chapter 7 petition on or about May 20, 2015.

40. In Debtors' schedule, he identified the homestead as the above-described property and claimed an exemption in the home in Schedule C.

## ARGUMENT AND AUTHORITY

As the Tenth Circuit Court of Appeals noted in *In Re Sanders*, 39 F.3d 258 (10th Cir. 1994), lien avoidance is one component of the Bankruptcy Code's "fresh start:"

> In accordance with the policy objective of providing a "fresh start," bankruptcy law allows a debtor to invoke certain exemptions to avoid debts that otherwise survive bankruptcy. *In re Johnson,* **57 B.R. 635, 639** (Bankr.N.D.Ill. 1986). The homestead exemption set forth at **11 U.S.C. § 522** protects the debtor and the debtor's dependents by helping them to preserve an interest in their home.

Pursuant to 11 U.S.C. §522(f):

> (f) (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection **(b)** of this section, if such lien is —
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); or

In the present case, Creditor obtained a judicial lien against Debtors by way of judgment in violation of the law, and in frustration of the implementation of an existing mediated agreement through this bankrupcy's adversarial proceeding 15-1248. Such money judicial lien operates as a lien against Debtors' home but was also specifically used in personam against Debtor and increased through unlawful means. The underlying debt is not of the kind specified in 11 U.S.C. §523(a)(5).

Debtor has claimed an exemption in the home. *Owen v. Owen,* 500 U.S. 305 (1991). The judicial lien impairs Debtors' exemption, to the extent the home is to be transferred to a trust for the benefit of his daughter, and is therefore avoidable under §522(f). *In Re Sanders*, 39 F.3d 258. Debtor requests that this Court issue an order avoiding the lien of Creditor Franklin American Mortgage against the home, described *supra* and incorporates by reference the arguments made in the Petition for new adversarial proceeding against Franklin American Mortgage and Federal National Mortgage Association.

## CONCLUSION

Based on the foregoing facts and applicable law, Debtor requests that this Court order that Creditor's judicial lien be ruled avoided and unenforceable against the following property, based on the fact an adversarial proceeding has been initiated to enjoin it, and for reasons above:

15721 Via Bella
Edmond, OK 73013

More particularly described as:

ESPERANZA SEC 2 007 000 LOTS 1 & 9, an Addition to Edmond, Oklahoma, Oklahoma County, State of Oklahoma, according to the recorded plat thereof

Debtor further requests any other relief to which he may be entitled at equity or law.

## NOTICE OF OPPORTUNITY FOR HEARING

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want to the Court to grant the relief requested, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Ave., Oklahoma City, OK 73102, no later than 14 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.
**The 14 day period includes the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f)**

## A SEPARATE CERTIFICATE OF SERVICE
## WILL BE FILED IN CONJUNCTION WITH THIS MOTION

10

Respectfully submitted,

/s/ Alexander Bednar
Alexander Bednar, OBA #19635
BEDNAR LAW FIRM
15721 Via Bella
Edmond, OK 73013
405 420 9030
Representing Debtor (self)